Good morning, your honors. Rick Simmons from Haley McNamara Law Firm on behalf of the appellant Walter Reed. May it please the court. In connection with this case, pre-trial, during trial and post-trial, we raised the federalism issues of the federal government using fraud statutes in connection with investigation of state campaign activities by state public officials. At the conclusion of the trial, Judge Fallon basically said he thought that the issues I raised would be more better determined by a policy-oriented court such as the Fifth Amendment. I do not mean to imply that the other issues we raised are insignificant. I think, standing alone, some of these issues are a basis for a new trial. I'm particularly talking about the denial of a defense, the exclusion of certain testimony from the CEO of St. Tammany Hospital. Those issues, I think, are well briefed and I won't go into that and you have not waived anything that's in your brief. Excuse me? You have not waived anything that's in your brief. That's correct. I think that, based on the comments of Judge Fallon, that's the focus should be on the federalism because I think that's the important issue. I address this because in 2010, the Schilling case, the Enron case, the U.S. Supreme Court defined the honest services fraud statute in terms of kickback and bribes. And the reason for that is in the state court has been compromised, or the state process has been compromised, and therefore the federal government stepping in is kind of allowed. But that's not this case. The state system was not compromised in any way. Mr. Reed never sold his office. I mention Schilling because I think the comments, the concurring opinion by Judge Justice Scalia set forth what's about to happen in this case. And his defining term was, his concern was the power to define new federal crimes with no ascertainable standard of guilt. And that's what we have here. The U.S. Supreme Court has kind of confirmed that in connection with the McDonald case. There they declined to construe the statute with regard to official act and said we're going to not let the government set the standard for good government for state and local officials. But when I suggest that that's what they did here, the federal prosecutors have defined new federal crimes, I give you the example of the open house. That's the campaign event. There were two of them in 2012. One of them was what you consider your 2,000 people at the event with banners and Walter Reed for DA. The other one was a simple function which there was no request to get funds, but merely a gathering of what I call a patron party where you have your political supporters there. They charged that as a crime. And the reason they did that, they had a witness who attended both events and made a comparison of them, which was very dubious. Wasn't there a problem about paying the son for the liquor when he didn't provide the liquor? Wasn't that at one of these two? Connection with the open house, no. There was a $25,000 open house event. That's the one Judge Fallon ultimately discarded. But part of that $25,000 was $8,000 of liquor supplied by his son. I don't think there was an issue there in terms of that particular amount. But there was an allegation that the money was actually redirected to a third party or something? Yeah, that's in connection with the America concept. The open house, the reason I mention the open house is because that's where they're defining the crime. In count one, they defined this open house as a crime. And it just wasn't that case. The truth of the matter is we had showed him giving a speech. We showed political supporters there. It was a classic political event. They just didn't pass the hat. And once again, the government's defining this political event. They're saying it can't be a allowable event under state campaign laws because there was no contributions. They're defining the crime once again. And when the Judge Fallon looked at the case, he says, especially the photograph, he says it appeared to be a squarely political function. And he took, discarded that $25,000. I focus on that because therein lies the potential for the government to define the crime. The second instance of defining the crime is what the government did in this case. The state law has a phrase, unrelated to the campaign or the holding of public office. They tried to eliminate the second phrase and they made it focus just on the campaign function. The concept of holding public office is very general. The state legislature has not done anything to change that. It's sort of a vague term. But now they're forcing campaign laws and making crimes out of something under state law that's not a crime. The government in this case attempted to make this an honest services case because they had it in the inception of the indictment, certain paragraphs that talked about honest services. I moved to strike that and the judge agreed with me. He also limited the expert I had to present those to, their expert from the board of ethics, who's defining everything in terms of violations of campaign law. And after this happened, I approached the bench and the judge agreed with me and his comment was the way the prosecution is packaging this evidence, they're misleading the jury. Misleading in the sense they're re-injecting the honest services. It's not an honest services case. And ultimately we were unable to present our own expert to deflate a number of these allegations. Again, another contribution that they defined was $25,000 to Reverend Cox's foundation to build a gym. They tried to say it was related to a plaintiff case, but Judge Fallon said, quote, the church gym was built and Walter Reed was given recognition, which may have given him votes. That's what politics is about, trying to get votes. The Fifth Circuit case of Radcliffe is the leading case and I think the quote there from Radcliffe states the following, Louisiana law establishes a comprehensive regulatory system governing campaign contributions. And we resist the government's reading of the fair fraud statute because it invites us to approve a sweeping expansions of federal and criminal jurisdictions in the absence of Congress' intent. Judge Fallon said over and over again that this was an unusual case. And he says, I don't think I've seen a fraud case like this before. And he's been on the bench 23 years. And the reason is they're defining the crime, as far as the violations, and that's exactly what Justice Scalia warned about, letting the prosecutors define the crime, and that's what they did here. There's also other policy reasons, including the use of the IRS in this case. Any time you have a campaign, you're going to report your expenditures on your campaign report. And their position is if you don't report it on your IRS 1040, then it's an IRS violation. So any time you have federal prosecutors enforcing state campaign law, you've got a built-in IRS case. Here this man paid 500,000, over half a million dollars in taxes, and they're talking about another 33,000. That would be a civil case ordinarily. I've saved a few minutes for rebuttal, but I think the thrust of this case is we have federal prosecutors defining the crime, especially in terms of state law. The state law has not changed. It's very vague, perhaps, but maybe the state legislature left it that way. They have the Board of Ethics. The federal prosecutors are not the Board of Ethics. All right. You've saved time for rebuttal, Mr. Simmons. Thank you. Ms. Towns? Good morning. May it please the Court, Autumn Town, on behalf of Appellant Stephen Reed. Your Honors are aware we've raised two issues in the brief, the insufficient evidence which ties in the McDonnell argument and the severance issue. I'm not waiving the severance issue, but unless the Court has questions, I'm going to reserve the time that I have for our first issue. Well, how did the joint trial actually prejudice Stephen Reed? What's the joint trial, the fact that it wasn't severed? I'm curious about your position. Our position on that, Your Honor, is that Walter Reed was one of the witnesses who ended up testifying on Stephen Reed's behalf. Several of the incidents that he was questioned about dealt with the allegations against Stephen Reed. The allegation about the liquor that was paid for but supposedly not provided. An allegation about payments that were made from vendors at that event. An allegation as to $14,000 invoice for several different projects that Stephen Reed did for his father. Walter Reed was one of the witnesses who testified as to all of those incidents, those having been performed, how they were carried out. There were additional witnesses, even witnesses called by the prosecution who also supported the defense that all of those incidents happened. Wouldn't that have been the same presentation of evidence if the trial had been severed for Stephen? Where's the spillover? So when the witnesses who came in to testify as to the hospital counts testified, essentially the prosecution used one of them to impeach Walter Reed. To basically say that Leo Hellman had been asked, supposedly, to sign an affidavit on behalf of Walter Reed saying that he knew that Walter believed it was his intention to represent the hospital personally and that he was asking for him to sign essentially a fraudulent affidavit. And that witness testified that he refused. So what the jury heard was because of those hospital counts that Walter Reed essentially was lying. And he was one of the witnesses who testified as to the defenses presented by Stephen Reed. Additionally, He just thinks that impugned his credibility. It did, Your Honor, yes. Additionally, there were three full days spent on the hospital case that had absolutely nothing to do with Stephen Reed. And the dollar amounts alleged there was over $600,000, which also went to suggest that this was a wide ranging pattern of fraud and deceit, when in fact it was not. None of this was hidden, like traditional fraud cases are. You better shift to your other point. You're going to run out of time. Thank you, Judge. Switching back to the insufficient evidence, Stephen Reed was convicted of three counts. Our first portion of that argument is the McDonnell federalism issue. Essentially that at trial, at no point was the second prong of the state campaign finance law argued. Basically a Louisiana state official can use campaign funds for reelection, which was the crux of the prosecution's case, or they can use it for the holding of public office. And the holding of public office is not defined anywhere. So there is no notice as to when you are or are not violating that particular prong of it. Now the government put on witnesses that never addressed that particular issue. They called three donors to the stand, and they said, aren't you upset that your money was fraudulently taken? Didn't you think it was going to be used for Walter Reed's reelection? And they all said, yes, we are. We're angry about that. But on cross, it was clarified that number one, they didn't actually know the state campaign laws, that they wanted it to only be used in accordance with the state campaign laws, which also included the holding of public office. And the government has argued that the McDonnell issue doesn't actually apply to this case because it's a different statute than the one the Supreme Court looked at. But it's been applied throughout jurisdictions since that decision came down to basically argue against the idea that you have, for the idea that you have to have fair notice of what a term means, that you have to, it has to be an agreed upon definition, and that you can't expand a crime without proper notice to a party. And that's exactly what happened here. Everything that Walter Reed, and subsequently Stephen Reed, because he received payments for campaign events, was legal. None of it was hidden. It was all reported. And as to the specific instances with Stephen Reed, the first count that he was convicted for involved a $14,000 approximately invoice for several events that he did for his father, several programs. The government, when it presented this information at trial, ignored the fact that the total amount of the invoice, it was claimed to be for one particular video. And they put it on expert and said there's no way that this video could have been worth that much. But what it was was actually three separate invoices, a golf tournament, a safe together per Walter Reed's request, which was supported by his CPA Ron Garrity, to make one full amount. And it was testified at trial by the government's own expert that Stephen Reed's rates of hire for that particular video were not unreasonable. But they lump it all together to try and argue that this money is being hidden, it's being stolen when it's not. The second issue, the wire fraud, that involved the liquor that Judge Clement had asked about previously. And even the state's witnesses testified that Jill Zerang, their forensic accountant, simply said, I didn't include the liquor in there that was provided by Stephen Reed. They had witnesses who testified it was brought from the DA's storage unit. They ignored these things because they were focusing on the first prong, and that's what they were hoping to convict under. I've reserved two minutes for rebuttal time. Yes, you have. Thank you. Thank you. Mr. Ginsberg. Good morning, and may it please the Court. My name is Jordan Ginsberg, and I was trial counsel in this case. With me today is my colleague, Ryan McLaren. Your Honors, this is not a state finance case. When Walter Reed and Stephen Reed took money that did not belong to them, when they treated the funds of others as their personal piggy banks, they committed a classic federal crime, a crime of fraud. Now, one of the defendants happened to be a public official. One of the sources of funds happened to be a campaign account, and they happened to spend some of those ill-gotten funds on things like flowers and money to a church and dinners. But that information, Your Honors, is evidence, not elements, of the crimes with which they were charged and convicted. Now, if I may point out a couple of corrections to the record, Kathleen Allen was not the government's expert witness, but rather a fact witness. Further, also, the anti-drug video was not a stand-alone count. That was the counts concerning the $14,300. Those were overreacts in count one of the conspiracies. And who called Kathleen Allen as a witness? Your Honor, the government called Kathleen Allen. So she wasn't a government witness? No, she wasn't an expert witness. She was a fact witness. I'm sorry if I misspoke. There are two prongs to the McDonnell and federalism argument, and neither of them apply here. First, McDonnell, the opinion itself, is very limited in scope. It applies only to Section 201 bribery cases, those circuits to have considered the applicability of McDonnell outside of Section 201 and found that it did not apply, the 3rd, 8th, and 11th, for example. And in those, they considered its applicability in other bribery-type cases like 666. Those are not at issue here. And there's been no indication either in the record or elsewhere to suggest that a court has extended McDonnell to a non-bribery case. Moreover, any of the federalism issues raised by the Supreme Court in dicta in McDonnell, they don't exist here. As the District Court noted, the terms at issue here, the elements of fraud, are not complex and are less technical than Section 201 bribery. As the District Court recognized in quoting this Court's Curry opinion, law does not define fraud. It needs no definition. Moreover, any other result would effectively immunize State officials from committing wire fraud in certain contexts, and that certainly doesn't seem to could have been the opinion or the intention of the Supreme Court in rendering the McDonnell opinion. Moreover, Your Honors, the State finance laws in this case were used as context. It explains the scheme. It tells the story. It provides proof of the defendant's respective knowledge and intent. Had someone else affiliated with the campaign done the same thing that Walter and Stephen Reed did, had they diverted money from the campaign, if the accountant, for example, had, that would be a wire fraud case too, the same one that exists here. The elements that were presented to the jury, the instructions that were presented to the jury, were not those of State campaign law or anything else. It was simply in the respective accounts conspiracy and wire fraud. And for those reasons, Walter Reed's position of politician was again simply context. McDonnell, other cases, it required the defendant have that public officialdom, that public official status and position. That wasn't the case here. It didn't matter other than in context to explain how he had access to the funds that Walter Reed was a public official or that there were campaign matters. This is also not new or novel for this Court. As far back as 1982, this Court is considered public officials in their misuse of campaign funds. Other circuits have done so similarly in more that were charged, the counts with which Walter Reed was convicted of, those were straightforward. In fact, he admitted his own testimony and the District Court recognized Walter Reed admitted that he had committed fraud on a number of these counts. He admitted that he should not. You had to do it the flowers to the X, Ys, right? But what about the $30,000 legal fee? Was that addressed to the jury? Was that tied to the hospital? Yes. So with respect to the $30,000, that was not one of the individualized counts. That was information that was not presented to the jury. The chart that was presented to the jury was correct and that the $30,000 came from a separate source of funds from James Marchand, not from the hospital. It was the defendant. Okay, go ahead. It was the defendant who brought it out that there was a prior draft of the chart. To the extent there was any confusion on behalf of the jury, it would have been as a result of the admission of the prior version which was not ever presented by the government to the jury. And there's no question as it concerns the tax counts that the $30,000 was unpaid. That regardless of where it came from, it doesn't change the tax loss amount and they don't contest now that the $30,000 was reported or that there was a resulting tax loss. Moreover, it did not prejudice Walter Reed's substantial rights in any way. The court should consider that by means of a plain error review, but under either the plain error standard or the abuse of discretion standard, the issue that Judge Clement, you bring up concerning the hospital versus Marchand count, under either standard it fails. As it concerns the severance argument, I'll touch on that briefly. The district court had ample opportunity both before, during, and after the trial to consider that evidence, its applicability. And the court considered that it was not going to be difficult for the jury to assess and to separate evidence where it applied. And moreover, on multiple occasions, Judge Fallon employed a curative instruction to specifically instruct the jury to keep certain pieces of information separate. In this case, as Ms. Towne noted, there were witnesses that overlapped significantly between the two. Jill Zarang testified as it concerns both the hospital portion as well as the campaign portion. Same with Leo Hemelt and Ron Garrity, the campaign accountant. All three of those witnesses, very significant witnesses, testified extensively both as to the hospital portion as well as the campaign finance portion. And the crimes took place over the same time period. Now the hospital counts extended much earlier, but between 2009 and 2013, the schemes that were alleged and with which the defendants were convicted were ongoing at the same time. Was the severance question raised prior to trial by a motion to sever? I assume it was. Yes. And that was denied. And then in the course of the trial, as the evidence came forward, was there any renewal of the severance issue? Yes, Judge Aikenbotham. They moved for severance before, during, and after trial. And there was... Edward, at the trial portion, what were the occasions for the renewal? Specifically, what was going on at that particular time? What piece of evidence was coming in? I've got objections that they made as it was presented. Both defendants moved multiple times during trial for severance. Walter Reed did so to separate the hospital counts from the campaign count. Stephen Reed did so to separate himself as a defendant. My recollection is that Walter Reed moved for severance more frequently than Stephen did. What about jury instructions with regard to joint or severance as to how evidence should be considered? Were there any instructions directed to that? Yes, Judge Aikenbotham. What did the district judge charge the jury? The judge found, charged the jury consistent with the Fifth Circuit pattern instructions. Specifically, record sites 3082, 3293, 4019, and 6346 were all instances. I'm going to move you over to forfeiture. As I understand it, you conceived that part of the forfeiture order must be corrected. That's correct, Judge Aikenbotham. In light of the Honeycutt case, the $46,200 that the district court ordered to be jointly and severally liable should be remanded. And how would we do that? Would we modify that here? I believe it would be remanded to the district court to consider in a portion how that $46,200 should be applied. The other argument that Stephen Reed's counsel raised concerned a potential, the sufficiency of certain pieces of evidence. And, Your Honors, just to again reemphasize, Ms. Townmade mentioned that the second prong of state law wasn't proven, but again this is not a state law case. This is a federal law case, a federal case applying federal criminal law. And as discussed in our brief, the elements as to all counts with which Stephen Reed was charged and convicted were established beyond a reasonable doubt. The district court, in an extensive opinion, had the opportunity to consider those very With respect to the affidavit provided by Leo Hemelt that he discussed in which Walter Reed asked him to sign a false affidavit, that again goes back to the severance issue. And it was Ms. Town and her predecessors before the district court haven't been able to establish prejudice for many of the hospital counts. They were sufficiently discreet for a jury to be able to consider in a portion the respective Given the singular purpose of the crime, the overlapping witnesses as well as the overlapping time period, it's the government's position that the district court appropriately denied severance both as to the counts as well as the joinder issue. And in applying the abuse of discretion standard that would be appropriate, the district court did not abuse its discretion. If there are no other questions, I would submit to the court that this is simply a textbook fraud case. This is not a prosecution of campaign laws or ethics laws. Judge Bowne has the opportunity to address all of these issues. And for those reasons, the government would request that this court affirm the conviction and sentence except for the limited honey cut issue. All right. Thank you, Mr. Ginsburg. Thank you. Mr. Simmons, you've saved time for rebuttal. With regard to the $30,000, the indictment suggested that there was a deliberate omission of the $30,000 legal fees at St. Tammany from his tax return. That proved to be wrong. The indictment was totally wrong. There was an adding machine tape that we discovered and showed to the government three or four weeks before trial, which showed that the $30,000 had something else to do. It was a 48 that was looked at as an 18, a simple CPA error. Yet they pretended all through the trial, and they knew it three weeks before that the indictment was an error. They left it there. I had previously tried to move to strike that section, and yet they went forward. They're even up on this court saying, oh, we're still investigating. No, they knew it. They were trying to finesse the jury. They had charts, two sets of the truth. One of them had St. Tammany Hospital. They didn't use that one. I mean, they cannot go forth with a grand jury indictment knowing it's wrong and try to confuse the jury, which is what they did. Mr. Simmons, did you move to strike the $30,000? Yes, I moved to strike. In the indictment. I moved to strike that paragraph because it's very confusing. In all but one year. I struck that. I tried to strike that. And then when I showed them the atom machine sheet, they should have said, well, okay, it's confusing. Let's strike it. But they went forward and deliberately, and even at this court saying, oh, we're still investigating. If they're confused by the time the jury's in panel, they should strike it too. Going back to the issue of Ms. Allen. Yes, she was called as a fact witness. But what they did, they packaged her as an expert. That's what Judge Fallon was saying. You took one hour talking about reading the false statement provisions and said, okay, you packaged her. That's what he referred to. You packaged her as an expert. And you're not fair to the defense, i.e., you had already excluded Mr. Gray Sexton. We did not get to prepare our defense. Not in opening statement. Gray Sexton would have been able to address these issues because they made it an ethics case. Despite the best efforts of Judge Fallon, they made it an ethics case. And we should have been able to present a defense. And with regard to this false affidavit, there was never an affidavit presented to anyone. There was discussion about response to a media inquiry. So this confusion about a false affidavit, I think that's an overstatement. I suggest that this is a case of government overreach. I would ask the court to dismiss the campaign accounts and the corollary tax accounts. And I suggest that there is a spillover effect. And with regard to the severance, Your Honor, you were on the case with Judge Jolly in the Warren case. And Judge Jolly commented that Mr. Warren did not sit on his hands. Pre-trial, post-trial, same way, Judge. You're going to lead to the record. Pre-trial, I asked for severance of the counts. I did it every time it came up. I did it post-trial, and I'm up here saying there's a prejudicial overflow. And Judge Fallon, in his decision to give bond-pending appeal, says there's a substantial issue as to whether that spillover of campaign accounts, which are not public money, versus the St. Tommy Hospital. So I suggest that the records preserve the spillover effect under the case of Warren McRae. Thank you. All right. Thank you, Mr. Simmons. Ms. Town, you've saved time for a moment. Thank you, Judge. I would just like to address briefly two of the points the prosecution made. They argued that this was not about state campaign laws. This was a federal fraud case. But it's not fraudulent if what you're using the money for is provided under state campaign finance law. Walter Reed wasn't taking this money and building himself new houses. He wasn't buying boats. He was giving money to churches who were constituents in his parishes. He was buying dinners and drinks for constituents when he saw them out at restaurants. He was sending flowers to constituents. He was paying his son, Stephen Reed, who provided goods and services for fundraising events, for the patron party open house event, for a safe driving initiative that was part of his district attorney's office. None of these funds were converted to personal use. The government keeps trying to argue that to say that it's a fraud case. It's not. And they also tried to argue that McDonnell has not been extended. But there have been other cases, and we've cited them in our briefs. United States v. Edwards out of the Seventh Circuit, that was a witness tampering conviction. That was reversed, and they cited McDonnell. United States v. Marinello, that was an IRS case. That one was reversed by the United States Supreme Court, and we've cited that, also citing Marinello. So it has been extended. And the court isn't bound to apply it just to Section 201. It's clearly been extended for the purposes of defendants deserve fair notice. They deserve a definition of what they're being charged with, and the government can't broaden their crimes by that. And they argue as to the severance issue, well, a jury instruction was made, and we acknowledge that the standard is that you do have respect for jury verdicts. But if the jury is given the wrong information, then you can't trust that verdict. And the district court recognized all of those issues and cited McDonnell in its decision to grant appeal bond. It talked about the prejudicial spillover from the hospital. It cited all of these issues, and we ask the court to consider that and reverse Stephen Reed's convictions. Thank you. Thank you, Ms. Towne. Your case is under submission, and we notice that your court appointed and wish to thank you for your willingness to take the case and for your good work.